E-FILED
Wednesday, 08 July, 2026  12:40:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JOHN H. CRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:26-cv-01009-SEM-DJQ |
| | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, in prison at East Moline Correctional Center, formerly incarcerated at Illinois River Correctional Center, asserts claims based on his medical care at Illinois River.

## I.    MOTION TO REQUEST COUNSEL

Plaintiff's Motion to Request Counsel (Doc. 5) is before the Court.

The Court undertakes a two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and, if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself.

*Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007). The Court must consider the factual and legal difficulty of a plaintiff's claims, and the plaintiff's competence to litigate them, while accounting for the plaintiff's literacy, communication skills, educational level, and litigation experience, plus the plaintiff's intellectual capacity and mental history (if information on those topics is before the court). *Id.*

Plaintiff has shown a reasonable attempt to find counsel on his own, and given the claims for denial of adequate medical care, and the potential for expert testimony and resulting more-complicated discovery, the Court will search for counsel for Plaintiff. However, the Court notes Plaintiff's pleadings are well arranged, and the Court also advises Plaintiff that there are many more requests for legal help in cases like this one than there are lawyers willing (or able) to expend the time necessary to litigate those cases. So, Plaintiff remains responsible for all case deadlines and must proceed with the expectation that he will be responsible for prosecuting this case himself. If a lawyer agrees to represent him, wonderful, but if not, Plaintiff must take care not to place himself at

a disadvantage by neglecting the case which is, at this point, entirely his responsibility.

## II.    MERIT REVIEW

The case is before the Court for a merit review of Plaintiff's amended complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Defendants

Plaintiff names as Defendants Wexford Health Sources, Inc., Dr. Lindsay Tate, Nurse Practitioner Terri Hicock, Medical Records Director Lisa Bishop, and Grievance Officer Kellie Dennis.

Factual Allegations

On May 29, 2023, Plaintiff was transferred to Illinois River from Stateville. He was at Stateville for five months. On arrival at Illinois River, he told Defendant NP Hicock that he 1) had a failed implant located in his right shoulder, 2) was scheduled for a "revision right reverse total shoulder replacement" on November 17, 2022, prior to his incarceration, and 3) had been in pain for the six months from November 2022 through May 2023.

Plaintiff requested to be evaluated by a physician several times due to ongoing pain and was only referred to NP Hicock. Dr. Lindsay Tate knew about Plaintiff's condition and extreme pain.

Hicock ordered x-rays of the shoulder two months later, in July 2023. The x-ray results confirmed Plaintiff's earlier statement to Hicock regarding his failed right shoulder implant.

Plaintiff first received pain medication in September 2023.

Plaintiff was not referred to an orthopedic specialist until November 2023, even though that was the necessary next step based off Plaintiff's self-report upon admission in May 2023 and as confirmed by the x-ray results from July 2023.

Hicock, Tate, or both contacted Dr. Ramirez on December 14, 2023, based on a note by Dr. Tate. But Plaintiff did not see Dr. Ramirez until March 2024. Plaintiff experienced a great deal of pain during that period. Due to the delay, Dr. Ramirez determined that Plaintiff's shoulder damage was irreparable and that Plaintiff would suffer permanent partial right arm disability.

Plaintiff filed grievances from September 2023 through February 2024. The grievances were denied by Defendant Kellie Dennis. Plaintiff appealed the grievances, and IDOC Director Hughes concurred with the resolution of the grievances.

Plaintiff requested his medical records during this period, and Defendant Lisa Bishop denied the requests.

<u>Application</u>

**Medical care.** Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Hicock and Tate.

These Defendants are plausibly alleged to have knowingly denied Plaintiff needed medical care. Plaintiff alleges knowledge, personal involvement, and lack of constitutionally adequate response by these Defendants regarding 1) his pain treatment and

2) substantive treatment of his known failed shoulder implant, the latter resulting in permanent disability. These allegations state an Eighth Amendment claim. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc).

Plaintiff's allegations do not state a claim against prison healthcare contractor Wexford Health Sources, Inc. Plaintiff alleges individual wrongdoing by Hicock and Tate. He does not allege that a corporate policy or practice, undertaken in deliberate indifference to the likelihood of constitutional violations, was the moving force behind any deprivations he suffered. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (the exacting standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations performing state functions).

**Grievances.** Plaintiff's allegations do not state a claim regarding the processing and ultimate denial of his grievances.

"If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (quoting *Greeno v. Daley*, 414 F.3d 645, 656

(7th Cir. 2005)); *Adams v. Reagle*, 91 F.4th 880, 894-95 (7th Cir. 2024), *cert. denied sub nom. Adams v. Arnold*, 146 S. Ct. 295 (2025) (applying *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009)); *see also Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (no substantive rights in prison grievance process).

Plaintiff was under the care of Nurse Practitioner Hicock and Dr. Tate. He was repeatedly seen, diagnostic tests were ordered, and he was prescribed medication, all before he began filing grievances about his care. This summary of events is not meant to indicate that the care Plaintiff was receiving was in fact constitutionally adequate care, but where medical staff are providing care to an individual in custody, other prison officials are entitled to leave the specifics of the medical care to the medical professionals without incurring liability for performing their job duties related to processing grievances.

**Medical records.** Plaintiff's allegation that his medical records requests fell on deaf ears does not state a federal claim. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) (no private right of action under HIPAA).

**Other legal theories.** Plaintiff lists several other legal theories of recovery. None are adequately alleged. His theory of "failure to interview defendants about case" is, as far as the Court can tell, not legally distinct from his deliberate indifference claim. His theory of intentional infliction of emotional distress is not tied to his factual allegations. His claim of respondeat superior liability against Director Hughes is without merit because there is no respondeat superior liability for constitutional claims. His due process allegations are not plausibly alleged. Further, to the extent any of these theories could be teased from the allegations in the complaint, they are all based on the same injuries recoverable if Plaintiff's Eighth Amendment claim were to be proved. Since Plaintiff can have but one recovery for one injury, they are also duplicates of the plainly stated deliberate indifference claims against Hicock and Tate. This case will therefore proceed as to only those Eighth Amendment claims.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [5] is conditionally granted. Clerk to forward case to Pro Bono Coordinator to search for counsel for Plaintiff.**

2. **Motion for Status [6] is MOOT.**

3. Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Hicock and Tate. Clerk is to terminate Defendants Wexford, Bishop, Dennis, and Hughes. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

4. This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.

5. The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

7. **The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.**

8. **This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, discovery requests and responses are NOT filed with the clerk. Plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.**

9. **Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.**

10. **The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.**

11.   **The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

Entered this 8th day of July, 2026.

*s/Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
